UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-1490-GW(FFMx) | Date | May 22, 2017 |
|---|---|---|---|
| Title | *Cheng Jiangchen v. Rentech, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |
|---|---|

| Javier Gonzalez | Katie Thibodeaux | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Ex Kano S. Sams II | Kristin N. Murphy |
| Corey Holter | |

**PROCEEDINGS:**     **MOTION OF MOVANT ICHIRO IKUNO FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL [13]**

Court and counsel confer.  The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling.  Movant's Motion is GRANTED.  Order to issue.

The Court sets a scheduling conference for June 8, 2017 at 8:30 a.m., with a joint report by noon on June 5, 2017.

|  | : | 04 |
|---|---|---|
| Initials of Preparer | JG | |

_**Jiangchen v. Rentech, Inc. et al.**_; Case No. 2:17-cv-01490-GW-FFM
Tentative Ruling on Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel

## I.    Background

Plaintiff Cheng Jiangchen sues Defendants Rentech, Inc. ("Rentech") and Keith B. Forman ("Forman") for securities fraud in this purported class action. *See generally* Complaint, Docket No. 1.

Plaintiff defines the Class as all purchasers of shares of common stock of Rentech between November 10, 2016 and February 20, 2017 (the "Class Period"). *Id.* ¶ 1.

Plaintiff alleges the following relevant facts:

Plaintiff purchased shares of common stock of Rentech during the Class Period. *Id.* ¶ 6.

Rentech is a renewable energy company that specializes in the processing and manufacturing of wood fiber and nitrogen fertilizer. *Id.* ¶ 7.  At all relevant times, Forman has been its President, CEO, and a director on its board. *Id.* ¶ 8.  Forman was intimately knowledgeable about all aspects of Rentech's financial and business operations. *Id.* ¶ 9.

In a press release issued on November 10, 2016, Forman emphasized the completed repairs of equipment at the Wawa and the Atikokan operating facilities of the company. *Id.* ¶ 12. On the same day, during a conference call with investors, Forman spoke extensively on the functionality of the new equipment and the expected growth in production at the Wawa facility as well as the increased performance at the Atikokan facility. *Id.* ¶ 13.  During the question and answer portion of the conference call, Forman continued to make representations about the company's repaired operating facilities and the expected increase in production and profits in the coming quarters. *Id.* ¶ 14.  In its quarterly report for the third quarter of 2016 filed with the Securities and Exchange Commission (the "SEC") on the same day, Rentech reported a decrease in revenue and an increase in operating expenses. *Id.* ¶ 15.  The filing also noted that the company's "operating segments [had] been affected in different ways by various negative and positive factors in 2016" and that the "results and outlook for our Wood Pellets: Industrial segment depend primarily on operating results from the Atikokan and Wawa Facilities." *Id.* ¶ 15.

The foregoing representations were, however, false and misleading because they failed to disclose the following adverse facts known by Forman during the Class Period, specifically that: (1) the issues with equipment and operating challenges had not been repaired and continued to persist; (2) it would be necessary to suspend operations at the Wawa facility; (3) Rentech would incur a significant asset impairment charge relating to the Wawa and the Atikokan facilities in its results for the fourth quarter of 2016; and (4) Rentech would be forced to explore strategic alternatives for the Wawa facility. *Id.* ¶ 16.

The truth was finally revealed on February 21, 2017 when Rentech issued a statement announcing the cessation of production at the Wawa facility and the reduction of operations and production at the Atikokan facility. *Id.* ¶ 17.  Upon the release of the news, the price of the Rentech common stock plunged $1.31 per share (or 47.6%) on unusually high trading volume of more than 3 million shares trading (or near ten times the average daily trading volume). *Id.* ¶ 18.

Based on essentially the foregoing allegations, Plaintiff claims a violation of the Section 10(b) of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and Rule 10b-5 of the SEC. *See id.* at 17-21. Plaintiff seeks the following relief: (1) compensatory damages; (2) reasonable costs and expenses, including counsel fees and expert fees; and (3) any further relief as the Court deems proper. *See id.* at 21.

Ichiro Ikuno ("Ikuno"), a member of the proposed class, now moves for his appointment as the lead plaintiff and approval of Glancy Prongay & Murray LLP ("Glancy") and Holzer & Holzer, LLC ("Holzer") as the lead counsel in this action. *See generally* Notice of Mot. and Mot. for Appointment as Lead Pl. and Approval of Counsel ("Motion"), Docket No. 13; *see also* Mem. in Supp. of the Motion ("Memo"), Docket No. 14; Decl. of Robert V. Prongay in Supp. of the Motion ("Prongay Decl."), Docket No. 15. The Motion is unopposed.

## II.    Legal Standard

The plain language of the PSLRA " instructs district courts to select as lead plaintiff the one 'most capable of adequately representing the interests of class members.'" *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(i)); *see also Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor Capital Advisors*, 498 F.3d 920, 924 (9th Cir. 2007). Relatedly, the PSLRA sets forth "a simple three-step process for identifying the lead plaintiff" in private class actions arising under the Securities and Exchange Act of 1934. *Cavanaugh*, 306 F.3d at 729.

First, the court must verify that a proposed lead plaintiff has publicized "the pendency of the action, the claims made, and the purported class period" in accordance with the statutory requirements of the PSLRA. *Id.*; *see also* 15 U.S.C. § 78u-4(a)(3)(A)(i). The first plaintiff to file an action covered by the PSLRA must post this notice "in a widely circulated national business-oriented publication or wire service." 15 U.S.C. § 78u-4(a)(3)(A)(i). The notice must also state that "any member of the purported class may move the court to serve as lead plaintiff" "not later than 60 days after the date on which the notice is published." 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

Second, the court must adopt a presumption that the most adequate plaintiff is the "person or group of persons" that (a) either filed the complaint or made a motion in response to the published notice, (b) has the greatest "financial interest in the relief sought by the class," and (c) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

> [T]he district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit. It must then focus its attention on *that* plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of "typicality" and "adequacy."

*Cavanaugh*, 306 F.3d at 729 (emphasis in original) (footnotes omitted). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "Representation is adequate if (1) the attorney representing the class is qualified and

2

competent; and (2) the class representatives are not disqualified by interests antagonistic to the remainder of the class." *In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002) (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

Third, the court must consider any rebuttal evidence brought forth by a member of the purported class that the presumptive lead plaintiff (a) "will not fairly and adequately protect the interests of the class" or (b) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). If the court determines that the presumptive lead plaintiff does not meet the typicality or adequacy requirement, then it must return to step two, select a new presumptive lead plaintiff, and again allow the other plaintiffs to rebut the new presumptive lead plaintiff's showing. *Cavanaugh*, 306 F.3d at 731. The court repeats this process "until all challenges have been exhausted." *Id.* (citation and footnote omitted).

Under the PLSRA, the lead plaintiff is given the right, subject to court approval, to "select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "[T]he district court should not reject a lead plaintiff's proposed counsel merely because it would have chosen differently." *Cohen v. U.S. Dist. Court for N. Dist. of Cal.*, 586 F.3d 703, 711 (9th Cir. 2009) (citation omitted). "[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice." *Id.* at 712 (citations omitted).

## III.    Discussion

Ikuno has sufficiently met the statutory requirements to merit his appointment as the lead plaintiff in this action.

First, Ikuno submits that a notice was published in accordance with the statutory requirements set forth under 15 U.S.C. § 78u-4(a)(3)(A). *See* Memo at 5. Indeed, the notice published timely on February 22, 2017, through *Business Wire*, in connection with the similar action pending in another forum, making clear: (1) the pendency of an action in that forum, filed on behalf of purchasers of Rentech's securities; (2) the securities fraud claims asserted in that action; (3) the purported class period, which was slightly more expansive than that set forth here; and (4) that any member wishing to serve as lead plaintiff could file a motion to do so by April 24, 2017. *See generally* Prongay Decl., Ex. A at 1. That notice is sufficient for the purposes of this Motion. *See* 15 U.S.C. § 78u-4(a)(3)(A)(ii) ("If more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter is filed, only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published in accordance with clause (i).").

Second, Ikuno filed this Motion on April 24, 2017, within the 60-day period set forth in the notice in *Business Wire*, evidencing his timely compliance with 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa). *See* Memo at 6. He also contends that he possesses the largest financial interest in the relief sought by the purported class. *See id.* at 6 (citing Prongay Decl., Ex. C); *compare* Prongay Decl., Ex. C (Ikuno disclosing a financial interest of $44,215.80), *with* Docket No. 1 at 24 (Plaintiff disclosing a financial interest of less than $20,000). The Court is not aware of any allegation or evidence that contradicts Ikuno's assertion regarding his financial interest. In fact, securities litigation against Defendant in alternative forums involved a much smaller financial interest. Defendant's latest annual report filed with the SEC discloses two additional securities class action under the section labeled "Litigation Relating to the Atikokan and Wawa Facilities":

3

> On February 22, 2017, Juan Las Heras, a purported shareholder of the Company, filed a federal securities class action complaint on behalf of other shareholders of Rentech similarly situated to Mr. Heras, against Rentech, Inc., Jeffrey R. Spain, and Keith Forman in the U.S. District Court for the Eastern District of New York (the "Heras Lawsuit").  On February 23, 2017, Cheng Jiangchen, a purported shareholder of the Company, filed a federal securities class action complaint on behalf of other shareholders of Rentech, Inc. similarly situated to Mr. Jiangchen, against Rentech, Inc. and Keith Forman in the U.S. District Court for the Central District of California (the "Jiangchen Lawsuit").  On March 7, 2017, Carlos Raul Cuadra, a purported shareholder of Rentech, filed a federal securities class action complaint on behalf of other shareholders of Rentech similarly situated to Mr. Cuadra, against Rentech, Inc., Jeffrey R. Spain, and Keith Forman in the U.S. District Court for the Eastern District of New York (the "Cuadra Lawsuit", and together with the Heras Lawsuit and the Jiangchen Lawsuit, the "Lawsuits").

*See* Rentech, Inc.'s Form 10-K for the Fiscal Year Ended December 31, 2016, https://www. sec.gov/Archives/edgar/data/868725/000156459017006169/rtk-10k_20161231.htm (last visited May 18, 2017).[1]  The *Cuadra* Lawsuit, where the plaintiff had filed a certification that he purchased 500 shares of common stock of Rentech at $2.76 each, has since been voluntarily dismissed without prejudice.  *See Cuadra v. Rentech, Inc.*, No. 17-1284, Docket No. 11 (E.D.N.Y. May 12, 2017).  The *Heras* Lawsuit, where the plaintiff had filed a certification that he purchased 1,610 shares of common stock of Rentech at $2.4489 each, has also since been voluntary dismissed without prejudice.  *See Heras v. Rentech, Inc.*, No. 17-0997, Docket No. 13 (E.D.N.Y. May 10, 2017).  Both these lawsuits asserted financial interests that Ikuno surpasses by a wide margin.  Indeed, in the *Heras* Lawsuit, additional members of the purported class emerged and filed a motion to appoint lead plaintiffs, but withdrew their motion once Ikuno filed his own motion to be appointed as the lead plaintiff in that action.  *See Heras*, Docket No. 11 ("Plaintiffs Anton Shaigne, Jeffrey Romenesko, and Daniel McDermott (collectively, 'Movants') having reviewed the competing lead plaintiff [Ikuno's] motion, do not appear to have the largest financial interest and therefore Movants hereby withdraw their Lead Plaintiff motion[.]"); *see id.*, Docket No. 8 (Ikuno filing his own motion to be appointed as the lead plaintiff, certifying his financial interest identical to that asserted here).

Ikuno also meets the typicality and adequacy requirements of Rule 23 because, as he indicates, he suffered the same harm experienced by the class, relying similarly on Defendants' alleged misrepresentations; his recovery too is premised on the same theory as the rest of the class.  *See* Memo at 8.  As such, his claims are representative of the class.  *See Hanlon*, 150 F.3d at 1020.  Moreover, there is no evidence that his interests are antagonistic to the remainder of the class.  *See Emulex*, 210 F.R.D. at 720.  In addition, based on a review of the resumes of Glancy and Holzer, the law firms selected by Ikuno to serve as class counsel, the Court concludes that they possess relevant experience in prosecuting securities fraud class actions on behalf of

---

[1] The Court takes judicial notice of this material under Rule 201 of the Federal Rules of Evidence.

4

investors, and are *prima facie* qualified and competent. *See generally* Prongay Decl., Exs. D-E. In sum, Ikuno has provided information that satisfies the requirements set forth under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), and the Court would, therefore, adopt the presumption that Ikuno is the most adequate plaintiff in this action. *Cavanaugh*, 306 F.3d at 729-30.

Third, the Motion is unopposed and, as such, there is no rebuttal evidence brought forth by any member of the purported class that Ikuno would not fairly and adequately protect the interests of the purported class or, for that matter, that he is subject to any unique defenses that could render him incapable of adequately representing the class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). As such, the presumption that Ikuno is the most adequate plaintiff here stands unrebutted. The Court, therefore, appoints Ikuno as the appropriate lead plaintiff in this action.

Next, Ikuno seeks the appointment of Glancy and Holzer as co-lead counsel. Memo at 8-9. The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). Ikuno asserts that his proposed counsel have the necessary skills and resources to efficiently and effectively prosecute this action on behalf of the class. Memo at 8-9. Indeed, as discussed earlier, the two firms appear to possess extensive experience and expertise in serving as class counsel in class action securities litigation. *See id.*; *see generally* Prongay Decl., Exs. D-E. Ikuno, therefore, makes a *prima facie* showing of adequacy as to Glancy and Holzer, and the Court is not aware of any evidence that contradicts that showing. Accordingly, the Court finds Ikuno's selection of class counsel to be reasonable. *See Cavanaugh*, 306 F.3d at 734 ("Selecting a lawyer in whom a litigant has confidence is an important client prerogative and we will not lightly infer that Congress meant to take away this prerogative from securities plaintiffs. And, indeed, it did not. While the appointment of counsel is made subject to the approval of the court, the [PSLRA] clearly leaves the choice of class counsel in the hands of the lead plaintiff.") (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001); *Cendant*, 264 F.3d at 276 ("[T]he [PSLRA] evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.").

## IV. Conclusion

Based on the foregoing, the Court would grant the Motion.